848 P.2d 984

Petro G. ELIOPULOS and Janet A. Elio-
pulos, individually and as husband and
wife, Plaintiffs–Appellants,

and

Northwest Land Investment Company,
Inc., an Idaho corporation,
Plaintiff,

v.

Harry W. KNOX II, Ann K. Neavill, Rod-
ney B. Spackman, James E. Kevan,
Leonard N. Purdy, Marion Pugmire,
H.E. Slade, Defendants–Respondents.

No. 19233.

Court of Appeals of Idaho.

Nov. 4, 1992.

Rehearing Denied Feb. 4, 1993.

Petition for Review Denied April 13, 1993.

Petro G. Eliopulos and Janet A. Eliopulos, Boise, appearing pro se. Petro G. Eliopulos, argued.

Cosho, Humphrey, Greener & Welsh, Boise, for defendants-respondents. Howard Humphrey, argued.

WALTERS, Chief Judge.

This is an appeal from an order of summary judgment partially dismissing a third-party complaint against the individual directors of a bank. For the reasons below, we affirm.

### Facts and Procedural Background

The relevant facts are as follows. Sometime in the mid–1980's, Petro Eliopulos founded Northwest Land Management, Inc., (Northwest), an Idaho corporation in the business of purchasing and selling orchards and other investment properties. Northwest took out several large loans with Idaho State Bank, (ISB), loans that Petro and his wife, Janet, personally guaranteed. In late 1986, Northwest failed to make payments on its loans. In December of that year, an ISB loan officer, Ann Neavill, contacted Petro Eliopulos regarding his guarantee of the approximately $500,000 debt owed by Northwest. Through Neavill and another bank employee, Harry Knox, the Eliopuloses negotiated an agreement to restructure the Northwest debt and to provide for future funding of the company's operations and expansion. Pursuant to the agreement, the Eliopuloses, in January, 1987, executed continuing personal guarantees in favor of ISB for all indebtedness owed or to be owed by Northwest. As an integral part of the agreement, ISB promised to fund additional loans to Northwest over the next two years, and to extend funding to the Eliopuloses' farming operations at Dry Lake Farm—a business begun years before, and unrelated to, the activities of Northwest. As an additional accommodation to the bank, the Eliopuloses agreed to place their personal accounts with ISB, including a $200,000 certificate of deposit (the Farm CD), the purpose of which was to make annual payments on the Dry Lake Farm real estate mortgage. In restructuring the loan, the parties attempted to avoid the statutory limitations on the loan amount by involving Alexis Eliopulos, Petro's sister, by transferring assets of Northwest to her and having her then pledge them to ISB.

In the meantime, ISB came under severe regulatory pressure from the Federal Reserve Bank and the Idaho Department of Finance. ISB's board of directors later informed Northwest and the Eliopuloses that it would not continue to fund the loans made,[1] and that it would not extend the future funds that it had promised. Unable to keep current in its operations, Northwest soon defaulted on its loans. In turn, ISB demanded that the Eliopuloses repay

---

1. ISB maintains that it had fully funded the loans made, but that it refused to extend further money to either Northwest or the Eliopuloses.

Northwest's $1,300,000 indebtedness according to the terms of the continuing guarantees. The Eliopuloses refused. In the meantime, ISB employee Ann Neavill directed that the Eliopuloses' Farm CD be applied to offset debts owed the bank by Northwest.

In October, 1987, ISB sued the Eliopuloses to enforce the loan guarantees. The Eliopuloses denied liability, asserted numerous counterclaims against ISB, and filed a third-party complaint[2] against ISB and the seven members of the bank's board of directors. Two of the directors, Harry Knox and Ann Neavill, were also employed with the bank as loan officers and were the only individuals directly involved with the Eliopuloses' loan negotiations and lending arrangements. The other five directors, Rodney Spackman, James Kevan, Leonard Purdy, Mirion Pugmire, and H.E. Slade, (collectively referred to as "the Spackman directors"), had little if any direct involvement with the Eliopuloses' loans.

In April, 1990, ISB and the Eliopuloses entered a written settlement agreement and mutual release, resulting in the entry of a stipulation and order dismissing all claims between ISB, and any of its employees in their capacities as employees of the bank, and the Eliopuloses. The Eliopuloses later conceded that many of their third-party claims against the directors were subsumed by the settlement and release. However, they continued to maintain their claims for negligence, conversion, fraud, breach of fiduciary duty, bad faith tort, violation of state banking laws, violation of state and federal racketeering statutes, and punitive damages. Before trial, the individual directors moved for summary judgment on the third-party complaint. Ruling there was no evidence to establish liability on the part of any of the Spackman directors, the court granted summary judgment in their favor. Additionally, the court concluded that the Eliopuloses had failed to establish their claims of negligence, viola-

tions of state and federal racketeering statutes, bad faith tort, and breach of fiduciary duty, and dismissed those claims from the case. Knox and Neavill, the remaining defendants, maintained that the alleged acts of wrongdoing underlying these claims were committed within the scope of their agencies as bank employees, not as directors, and that as such they were released from liability under the terms of the settlement agreement. The court reserved its ruling on this part of the motion until after trial, concluding that the capacity in which the alleged acts were committed presented an issue of fact. Thus, the remaining claims—fraud, conversion, violations of state banking laws, and punitive damages—proceeded to trial against Knox and Neavill.

At the conclusion of the trial, the jury returned a special verdict finding Knox and Neavill liable for conversion and for violating the banking laws. It awarded damages to the Eliopuloses in the amount of $482,-500 on those claims. However, the jury also found Knox and Neavill not liable for fraud and further found that their conduct did not warrant imposing punitive damages. Upon this verdict, the district judge entered judgment in the amount of $482,-500 against Knox and Neavill. The judge then took up the question of the effect of the settlement agreement upon the liability of the directors. Based upon the evidence presented at trial, the court found that Knox's and Neavill's wrongful acts were committed in their capacities as bank employees, not as directors. Applying the language of the settlement agreement, which expressly released ISB and its employees *in their capacities as employees*, the court concluded that the Eliopuloses could not recover against Knox and Neavill. Accordingly, the court vacated the judgment and entered a j.n.o.v. in favor of Knox and Neavill.

The Eliopuloses do not challenge the district court's decision to enter a j.n.o.v.[3]

---

**2.** The Eliopuloses pursued their action to recover damages sustained by them personally, and not for harm caused to Northwest. Northwest Land Management never formally appeared in the action, and, as the record indicates, was in bankruptcy at the time. The court earlier ruled

that Northwest's right of action properly belonged to its creditors.

**3.** The Eliopuloses have provided us with no transcript from the trial proceedings, precluding a review of the court's decision to enter a j.n.o.v.

Rather, they have chosen to appeal from the district court's pretrial order dismissing most of their third-party claims. They maintain that dismissal on summary judgment was improper, and that they are entitled to a trial on those claims.

## Standard of Review

In an appeal from an order granting a motion for summary judgment, we will review the pleadings, depositions, and admissions on file, together with the affidavits, if any, to determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c); *Ray v. Nampa School Dist. No. 131*, 120 Idaho 117, 814 P.2d 17 (1991). This Court's standard of review is the same as the standard used by the district court in passing upon the motion. *McDonald v. Paine*, 119 Idaho 725, 810 P.2d 259 (1991). All facts in the record and all reasonable inferences drawn from those facts are viewed in favor of the party resisting the motion. *Treasure Valley Bank v. Butcher*, 117 Idaho 974, 793 P.2d 206 (1990). The burden of proving the absence of material facts is upon the moving party. *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 452 P.2d 362 (1969). However, the resisting party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." I.R.C.P. 56(e); *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987). Affidavits containing general or conclusory allegations, unsupported by specific facts, are not sufficient to preclude entry of a summary judgment, if the opposing affidavits set forth specific and otherwise uncontroverted facts. *Barlow's Inc. v. Bannock Cleaning Corp.*, 103 Idaho 310, 647 P.2d 766 (Ct.App. 1982). However, a mere scintilla of evidence will not suffice to create a genuine issue of fact. *Evans v. Twin Falls County*, 118 Idaho 210, 796 P.2d 87 (1990); *Johnson v. Gorton*, 94 Idaho 595, 495 P.2d 1 (1972).

Furthermore, a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Badell v. Beeks*, 115 Idaho 101, 765 P.2d 126 (1988) (citing *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). In such a situation, the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which that party bears the burden of proof at trial. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. This rule facilitates the dismissal of factually unsupported claims prior to trial. *See Garzee v. Barkley*, 121 Idaho 771, 828 P.2d 334 (Ct.App.1992); *Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir.1990), *cert. denied*, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991). In considering the correctness of an order granting partial summary judgment, raised on appeal after trial, our review is limited to those facts and allegations before the district court at the time it ruled on the motion.

## Director liability

■ In Idaho, directors of a bank are elected by stockholders to manage, as a board, the affairs, business, and property of the bank. I.C. § 26–213(1). The directors do not act individually for the corporation, i.e., the bank, but collectively as the board of directors. However, directors can be held liable for their individual as well as their collective wrongs. A director who personally participates in a tort is personally liable to the victim, even though the corporation might also be vicariously liable. H. HENN & J. ALEXANDER, LAWS OF CORPORATIONS, § 218, at 582 (1983). However,

[a] director of a corporation does not incur personal liability for its torts by reason of his official character; he is not liable for torts by or for the corporation *unless he has participated* in the wrong. Accordingly, directors who are not parties to a wrongful act on the part of *other* directors are not liable therefore. If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for

the corporation, he is [personally] liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort.

18B AM.JUR. *Corporations* § 1877, at 723–24 (1985) (emphasis added). However, a director is not liable for the wrongful acts of officers, agents, or employees of the corporation where he has not participated in or ratified the act. *Id.* § 1879, at 727. "Participation" may be found on the basis of direct action, but also may consist of knowing approval or ratification of the unlawful acts of others. *Id.* § 1877, at 725.

In addition to liability imposed by common law, directors may be held statutorily liable under the provisions of the Idaho Bank Act, I.C. § 26–101, *et seq.* The Act provides that "[a]ny director, officer or other person *who shall participate* in any violation of the laws of this state relative to banks or banking, shall be liable for all damages which said bank, its stockholders, depositors, or creditors shall sustain in consequence of such violation." *See* I.C. § 26–213(5) (emphasis added). Thus, in order to maintain their claims against the directors, the Eliopuloses must produce evidence that the directors participated in the allegedly wrongful acts. Absent proof of his or her participation, an individual director is entitled to summary judgment.

In reviewing the district court's order, we will first address those claims it dismissed only as to the Spackman directors: conversion, fraud, violation of state banking laws, and punitive damages. Then we will discuss the remaining claims, which the court dismissed as to all of the directors: breach of fiduciary duty, bad faith, negligence, and violations of state and federal racketeering statutes.

### Conversion

■ As indicated above, the court dismissed the claim of conversion as to the Spackman directors, and the court proceeded to trial against Knox and Neavill. The Eliopuloses argue that the court's decision to dismiss the Spackman directors was erroneous, and that they are entitled to a trial on that claim against those individuals. As discussed above, a director is not liable for the torts committed by the other directors or officers *unless he has participated* in the wrong. In this case, each of the Spackman directors filed an affidavit denying that he knew of or had authorized using the Farm CD to pay the debts of Northwest, the act constituting the conversion. In the face of these affidavits and the motion for summary judgment, the Eliopuloses were required to respond with specific facts showing there was a genuine issue for trial, that is, facts showing that the Spackman directors had participated in the conversion. *See* I.R.C.P. 56(e); *Barlow's Inc.*, 103 Idaho at 315, 647 P.2d at 771. As observed by the district judge, however, the Eliopuloses presented no *evidence* to establish the participation by any of them. Accordingly, the dismissal of the conversion claim was proper as to the Spackman directors.

### Fraud

■ The Eliopuloses alleged a count of fraud against all of the directors. Before trial, the district court dismissed that count as to the Spackman directors, and the claim was tried against Knox and Neavill. By its verdict the jury specifically found no fraud on the part of either Knox or Neavill. The Eliopuloses now contend that the court erred in dismissing the fraud claim as to the Spackman directors, and that they are entitled to a trial on that claim against those parties. We note, however, that the Eliopuloses presented no evidence of any direct or independent acts of fraud on the part of the Spackman directors at the time of summary judgment. Instead, their claim against those individuals derived solely from the directors' knowing approval or ratification of the allegedly fraudulent acts of Knox and Neavill. Arguably, the record before the district court at the time it ruled on the motion did contain sufficient evidence from which a jury reasonably could infer that the Spackman directors, who approved the loan restructure and lending arrangement, knowingly approved of the acts of Knox and Neavill. Nonetheless, we hold that the jury's later, specific finding of no fraud on the part of Knox or Neavill precludes the Eliopuloses from relitigating

that factual issue in a subsequent trial against the Spackman directors.

 The doctrine of collateral estoppel operates to prevent relitigation of an issue that was fully and fairly litigated in a prior proceeding. *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1987). That doctrine applies if (1) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate that issue in the earlier proceeding; (2) the issue decided in the prior litigation is identical with the one presented in the action in question; (3) the issue was actually decided in the prior adjudication; (4) there was a final judgment on the merits; and (5) the party against whom the prior decision is asserted is a party, or is in privity with a party, to the prior adjudication. *Anderson*, .112 Idaho at 183–84, 731 P.2d at 178–79; *see also Safeco Ins. Co. of America v. Yon*, 118 Idaho 367, 369, 796 P.2d 1040, 1043 (Ct.App.1990). In this case, the factual issue of whether Knox and Neavill committed fraud—an element essential to the Eliopuloses' claim against the Spackman directors—was fully adjudicated in the earlier trial and decided against the Eliopuloses. It is clear from the pleadings and the jury verdict that the requirements for collateral estoppel set forth in *Anderson* were met, and the Eliopuloses are precluded from relitigating the issue in a subsequent trial against the other directors.

### Statutory Liability for Violations of the Banking Laws

 The Eliopuloses also alleged that the directors participated in a violation of Idaho's banking laws, and that the directors are therefore liable to them under the provisions of I.C. § 26–213(5). The two specific[4] allegations of wrongdoing before the district court at the time of summary judgment were (1) the wrongful set-off of the Eliopuloses' Farm CD against the indebtedness of Northwest; and (2) the extension of loans to Northwest in excess of the legal lending limits set forth in I.C. § 26–709. Although the court found sufficient evidence to warrant a trial against Knox and Neavill on the issue of the wrongful set-off of the CD, it again ruled there was no evidence to show that the Spackman directors had participated in the set-off. As explained above, the court's decision is supported by the record and was proper. With respect to the directors' alleged violation of the loan limitation statute, the court ruled that the Eliopuloses lacked standing to sue for damages. Again, we agree with the district court's ruling.

Idaho Code § 26–709[5], which limits the amount of money a bank can loan to any one borrower, is contained in the Idaho Banking Act. The express purpose of the Act is to benefit depositors and shareholders, to maintain public confidence in banks, and to preserve the banking system with the state. *See* I.C. § 26–102(1). To further that purpose, Idaho Code § 26–213(5) provides that "[a]ny director, officer or other person who shall participate in any violation of the laws of this state relative to banks or banking, shall be liable for all damages which said *bank, its stockholders, depositors, or creditors* shall sustain in consequence of such violation." (Emphasis added). The Eliopuloses contend that the aggregate loans made by ISB to Northwest violated I.C. § 26–709, and that the directors who approved the loans, are liable to the Eliopuloses for damages. However, we find nothing in the Act's stated purpose or its statutory scheme to suggest that it was designed to protect *borrowers*. Indeed, the liability for violations of the Act are limited to damages sustained by the bank, its stockholders, depositors and creditors. *See* I.C. § 26–213(5). The conspicuous absence of any recognition of borrowers' rights clearly indicates that a borrower has no standing to sue based on alleged violations of the Act.

---

4. In their brief, the Eliopuloses discuss several other violations; however, these alleged wrongs were neither pled nor brought to the attention of the district judge at time of summary judgment. Accordingly, they will not be considered here.

5. Idaho Code § 26–709 provides:
 **Loans to one person.**—The total liabilities to any bank of any person for money borrowed, shall at no time exceed twenty percent (20%) of the aggregate paid-in capital, surplus and capital notes of such bank.

Although the Eliopuloses were depositors of ISB, they do not assert that the excessive loans injured them as depositors. Rather, it is evident from their pleadings and arguments that they seek to recover for harm allegedly suffered as borrowers, or guarantors, of the excessive loans. As injured borrowers, they have no standing to sue for a violation of the Act. Accordingly, we hold that the district court properly dismissed the claim.

### Punitive Damages

■ The Eliopuloses also argue that the court erred in dismissing their claim for punitive damages against the Spackman directors. As explained above, the claim was tried against Knox and Neavill, and the jury returned a verdict specifically finding that the conduct of these defendants did not warrant imposing punitive damages. That finding is binding upon the Eliopuloses and estops them from asserting the actions of Knox or Neavill as a basis for liability in a subsequent trial against the other directors. *See Anderson*, 112 Idaho at 183, 731 P.2d at 178. Furthermore, the Eliopuloses have failed to come forward with evidence of direct conduct on the part of any of the Spackman directors to sustain a claim for punitive damages against those individuals. We thus uphold the district court's decision to dismiss the claim for punitive damages against the Spackman directors.

### Errors Assigned But Not Argued Or Supported

■ The Eliopuloses have also assigned error to the district court's decision to dismiss their claims for breach of fiduciary duty and for the tort of bad faith. Although designated as errors in the Issues section of their brief, the Eliopuloses have neither argued these issues nor provided this Court with authority to support the assignments. Issues that are completely unsupported by either authority or argument in the appellants' brief will not be reviewed on appeal. *Murray v. Farmers Ins. Co.*, 118 Idaho 224, 796 P.2d 101 (1990); *In re Estate of Freeburn*, 101 Idaho 739, 620 P.2d 773 (1980); *Price v. Aztec Ltd.*, 108 Idaho 674, 701 P.2d 294 (Ct.App.

1985). Accordingly, we will not address these issues.

### Violations of State and Federal Racketeering Laws

The Eliopuloses also sought damages for the directors' alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and the Idaho Racketeering Act, I.C. § 18-7801, *et seq.* The district judge dismissed these claims as to all parties, ruling that the Eliopuloses had failed to establish a prima facie case under either of the statutes.

■ RICO renders criminally and civilly liable any person employed by or associated with any enterprise engaged in interstate commerce who conducts or participates in the conduct of the enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). The statute defines "enterprise" to include individuals, legal entities, and groups of individuals associated in fact. 18 U.S.C. § 1961(4). "Racketeering activity" means any act indictable as mail fraud, wire fraud, or the interstate transportation of stolen property. 18 U.S.C. §§ 1341, 1343, 2314–15. A "pattern of racketeering activity" requires at least two acts of racketeering activity within ten years. 18 U.S.C. § 1961(5). To prove a pattern of racketeering activity, a plaintiff must show that the racketeering predicates are related *and* that they amount to, or pose a threat of, a continued criminal activity. *H.J. Inc., v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Ticor Title Ins. Co. v. Florida*, 937 F.2d 447, 450 (9th Cir.1991).

■ In their complaint, the Eliopuloses alleged that the directors committed an unspecified number of predicate acts in the form of using the mails or wires in furtherance of a scheme to defraud them and others. However, they alleged but one general scheme of "racketeering," the purpose and plan of which was to induce them to enter into various loan arrangements with ISB. Although a single scheme may be sufficient to establish a pattern of activi-

ty, the plaintiff must show that the predicate acts themselves amount to, or constitute a threat of, *continuing* racketeering activity. *Id.* 492 U.S. at 239, 109 S.Ct. at 2900.

Based upon a thorough review of the record, we conclude, as did the district judge, that the Eliopuloses have failed to sufficiently plead or show the requisite pattern of racketeering activity. The record contains no facts to demonstrate either continuity of racketeering activity, or the threat of such continuity. Accordingly, we conclude that the district court was correct in dismissing the RICO claim on summary judgment.

■ Similar to the RICO statute, Idaho's racketeering statute requires a pattern of racketeering activity for liability to attach. *See* I.C. §§ 18–7804(c); 18–7805(a).[6] A "pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct, such as fraud, "that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents...." I.C. § 18–7803(d). The Eliopuloses have failed to come forward with evidence, or even to plead facts, that demonstrate the requisite "pattern of racketeering activity" as defined by the state statute. Summary judgment dismissing this claim therefore was proper.

### Negligence

■ The Eliopuloses also assert that the court erroneously granted summary judgment on their negligence claim. The elements of a common law negligence action are (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage. *Black Canyon Racquetball v. Idaho First Nat'l Bank*, 119 Idaho 171, 175–76, 804 P.2d 900, 904–05 (1991). The district court

dismissed the negligence claim as to all the directors, concluding that the damages alleged were purely economic in nature, and as such, are not recoverable in negligence absent personal injury or property damage. *See Just's, Inc. v. Arrington Constr. Co.,* 99 Idaho 462, 583 P.2d 997 (1978).

■ In its comprehensive discussion of the rule against claims for purely economic damages in negligence cases, the Court in *Just's* recognized certain exceptions involving special relationships between parties. 99 Idaho at 469–70, 583 P.2d at 1004–05. The "special relationship" exception generally pertains to claims against professionals who perform personal services, such as physicians, attorneys, architects, engineers and insurance agents. *Id.* (citing *McAlvain v. General Ins. Co. of America,* 97 Idaho 777, 554 P.2d 955 (1976)). Contrary to the assertions of the Eliopuloses, no such relationship exists between banks and their customers. *See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 824 P.2d 841 (1991); *Black Canyon Racquetball Club,* 119 Idaho at 176, 804 P.2d at 905. Accordingly, economic damages are not available to the Eliopuloses.

■ The Eliopuloses alternatively contend that not all the damages claimed are for economic losses, but that their damages claim also represents the *actual* losses they incurred. Specifically, they argue that they are entitled to recover for (1) their loss of the Farm CD, (2) their loss of crop proceeds already earned; (3) their expenditures of funds in defense of litigation initiated or caused by the directors' actions; and (4) for the personal loans they made to Dry Lake Farm and Northwest after ISB cut off its funding to those businesses. We will address these items in turn. We first note, however, that the Eliopuloses have made no showing that the directors, other than Knox and Neavill, either committed or participated in any acts of negligence. Accordingly, the district court properly dismissed the cause as to the

---

6. Idaho Code § 18–7804(c) provides, "It is unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the affairs of such enterprise by engaging in a pattern of racketeering activity." A person injured by a pattern of racketeering activity has a right to bring a civil action and to recover treble damages. I.C. § 18–7805(a).

Spackman directors. As explained below, the Eliopuloses have not established a claim for negligence against directors Knox or Neavill, either.

 *1. The loss of the Farm CD.* The Eliopuloses went to trial on the issues of Knox's and Neavill's liability for the loss of the Farm CD. At the conclusion of the trial, the court specifically found that wrongful application of the CD was committed by Knox and Neavill in their capacities as bank employees, not as directors. This finding, entered upon the court's judgment n.o.v., has not been challenged on appeal, and operates to collaterally estop the Eliopuloses from asserting otherwise in a subsequent trial, even under a different legal theory.

*2. Loss of crop proceeds.* There is nothing in the record before this Court to show that negligent acts on the part of any director caused the Eliopuloses to lose crop proceeds. Nor does it appear to us that the Eliopuloses ever submitted to the district judge this loss as an item of damages resulting from negligent acts of the directors. The record is simply insufficient to establish a claim for such damages.

*3. Cost of defending litigation initiated by the directors.* Litigation expenses incurred in the action are not allow-able as damages, but are recoverable under statute or contract as taxable costs. *See* C.T. McCORMICK, DAMAGES, § 61, at 236 (1935).

*4. The personal loans made to Dry Lake Farm and Northwest.* Finally, the Eliopuloses argue that they are entitled to recover for the loss of the personal funds they lent to Northwest and the Dry Lake Farm *after* ISB cut off its funding to those business. This claimed loss is not an actual loss, but rather is a purely economic loss which, under the rule of *Just's* is not recoverable in negligence.

We find no error in court's dismissal of the Eliopuloses' claim of negligence.

## Conclusion

For the reasons discussed above, we affirm the district court's orders of dismissal on summary judgment. Costs to the respondents, bank directors. No attorney fees on appeal.

SWANSTROM, J., and BECKER, J. Pro Tem., concur.