112 P.3d 838

Thomas H. McCORKLE and Jane Mack–McCorkle, husband and wife, Plaintiffs–Appellants,

v.

The NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a foreign corporation; and Does I through X, individuals whose identities are currently unknown, Defendants–Respondents,

and

Garth N. Wilde, individually and as an agent of The Northwestern Mutual Life Insurance Company, Defendant.

No. 30251.

Court of Appeals of Idaho.

May 12, 2005.

Law Offices of Comstock & Bush, Boise; Jackson, Foster & Graham, LLC, Mobile, Alabama, for appellants. Sidney W. Jackson, III, and John Arthur Bush argued.

Hawley, Troxell, Ennis & Hawley, Boise; Jorden Burt, LLP, Washington D.C., for respondents. Frank Burt argued.

GUTIERREZ, Judge.

Thomas H. McCorkle and Jane Mack–McCorkle (McCorkle) appeal from the order of the district court granting summary judgment in favor of The Northwestern Mutual Life Insurance Company (Northwestern) and Garth N. Wilde and from the order awarding attorney fees to Northwestern.[1] We affirm in part and reverse in part.

## I.

### FACTUAL AND PROCEDURAL SUMMARY

In March 1983, Thomas McCorkle met with Garth Wilde, an insurance agent for

---

1. The appeal involving Wilde was dismissed for the reason that Wilde and the McCorkles reached a mutually satisfactory resolution of their respective claims.

Northwestern. Wilde presented McCorkle with a plan to purchase whole life insurance through Northwestern. Wilde represented that the policy would include death benefit coverage of $250,000 in exchange for four annual payments of $5,887.50. According to McCorkle, Wilde represented that after the fourth year, additional premium payments would not be required because at that point the dividends would carry the policy. McCorkle was shown an illustration of how the dividends would operate. McCorkle claims he purchased the policy based on Wilde's representations and the illustration.

McCorkle applied for the policy by signing an application on March 29, 1983. According to the application, McCorkle applied for life insurance, a waiver of premium, and accidental death. McCorkle chose to use any dividends to purchase paid-up additional insurance, as opposed to using them to reduce premium payments, which would increase the policy's cash value. Just above McCorkle's signature, the application states, in relevant part, "[n]o agent is authorized to make or alter contracts or to waive any of the Company's rights or requirements."

McCorkle subsequently received the policy, which notified McCorkle on its face that he should read the policy carefully and that he could cancel it for any reason within ten days. The policy further informed McCorkle that the premiums were payable for forty-seven years, beginning on the policy date and every twelve months thereafter. The annual premiums were $5,887.50. In addition, the plan had a clause providing a "WHOLE LIFE PAID UP AT 90" benefit. That is, when McCorkle reached the age of ninety, the whole life policy would be paid to McCorkle in a lump sum of $250,000.

Sometime in 1987, approximately four years after the policy was purchased, McCorkle received a notice requiring additional premium payments. McCorkle immediately contacted his company's accountant, Timothy Howell, and requested that Howell contact Wilde. Howell testified through his affidavit that Wilde assured Howell that the plan was performing as represented and that the policy was set up to bill that way. Subsequently, in reliance on Howell's statements that Wilde

assured him the policy was working properly, McCorkle ignored all of the nearly one hundred succeeding premium notices. Each notice contained a phone number for questions regarding the policy. Apparently, McCorkle never called the number but continued to receive notices reflecting the various loan amounts and payments due. During this period, McCorkle made some payments and borrowed against his policy. In June 1999, Northwestern sent McCorkle an "Urgent Billing Notice" which stated: "Immediate payment needed. Individual policies may already be beyond their grace period."

In July 1999, McCorkle responded to the notice by writing to Northwestern regarding his policies, as well as his wife's policies. McCorkle stated in his letter:

.... We purchased the policies with the understanding that we would pay the bulk of the premium in the first 4 years and pay no further premiums after such time. All subsequent premiums were to be paid through the dividends and interest gained by the policy. Then the bulk of the monies could be drawn after the seventh year, thus minimizing our layout. At the point of purchase, emphasis was drawn to the fact that Northwestern Mutual was a very strong company and had paid dividends all years in the past.

Please note that I have provided an Exhibit 1 [the illustrative premium flow document shown McCorkle in 1983], which is based on my policy [policy# ] sold to me in 1983. The Exhibit 1 illustration shows the premium flow that would be needed in order to take out this policy, and then in year eight, an amount of $16,000 would be able to be withdrawn. After this, no further payments would be needed and the death benefit would never fall below $236,000. We paid several years after the first four years, and when we actually looked at the illustrations, I had requested the loan as indicated in illustration. At this point in time, there is an urgent billing notice (included as Exhibit II) that indicates that should I not pay a quarterly premium of $1568.00 in addition to a loan repayment, my policy could be in danger of lapsing. My agent [Wilde] has informed

me that the reason for this is interest rates have fallen and dividends have lowered. However, when the policy was sold they had indicated that dividends been paid at or above in all years. This gave me a safety factor and feeling of not having to pay. . . . I find myself trapped in to [sic] a corner of not being able to pay the amount of premium on the policies numbered above, but if I do not I will incur a very large tax penalty. *I feel that these policies have been grossly misrepresented.* Although it was indicated on the bottom of each of the illustrations that the dividends were not guaranteed, it was quickly discredited because Northwestern Mutual had met their dividend projections in all years. Based upon the circumstances I am in, I am requesting all money back that I have paid in on all policies numbered above. If this is not done, *I will have no other choice but to take legal action,* which I would in addition then have to ask for all inconveniences, pain, and suffering as cost.

I look forward to your prompt response within 20 days of the date of this letter, as my policy is lapsing. If we do not receive a response by that time, I will have no choice but to take legal action. . . .

(emphasis added). Northwestern responded on August 4, 1999, with a letter describing the *"four out of seven rule"* payment plan and noting that billed annual interest had not been paid in accordance with the plan. On December 20, 1999, Northwestern terminated the policy.

McCorkle filed his complaint on December 13, 2002, alleging breach of contract; willful misrepresentation; reckless misrepresentation; mistaken misrepresentation; deceit; fraudulent deceit; suppression; failure to train, supervise and monitor agents; and bad faith.

On June 17, 2003, Northwestern filed a motion to dismiss with a supporting brief. Wilde filed a motion to dismiss on June 18, 2003. Before the motions were heard, McCorkle conceded that he was unable to support his claims for breach of contract, bad faith, suppression, and failure to train, supervise and monitor agents. McCorkle also conceded that his claim for breach of contract

was time barred and that count seven of his complaint for suppression did not state a claim under Idaho law. These claims were dismissed. The only issues that remained were those claims based on misrepresentation and fraud. A hearing was held on Northwestern's motion to dismiss the remaining claims and the matter was taken under advisement. The district court then issued a notice of intent to treat Northwestern's motion as a motion for summary judgment and provided the parties reasonable opportunity to present material relevant to such motion. Northwestern filed a memorandum in support of summary judgment, along with a supporting affidavit. McCorkle filed a response in opposition to summary judgment, also supported by affidavits and inclusion of the letter of August 4, 1999. In its reply, Northwestern further supported summary judgment by presenting McCorkle's July 1999 letter for the purpose of demonstrating that the statute of limitations on the fraud based claims began to run on this date; although, up until the point of presenting this letter, Northwestern had taken the legal position that the statute of limitations began to run at some point in 1983. This letter was only submitted *in response* to McCorkle's opposition to summary judgment in which he relied on Northwestern's August 4, 1999, letter. The district court entered its memorandum decision, concluding that McCorkle discovered the facts giving rise to the allegations of fraud and misrepresentation against Northwestern no later than the summer of 1999, and therefore, McCorkle's cause of action was time barred. The district court subsequently entered judgment in favor of Northwestern.

Northwestern filed a memorandum of costs and a motion for attorney fees and costs pursuant to I.C. § 41–1839(4) and I.R.C.P. 54(d)(5), (d)(1)(B) and (e)(1). The district court heard arguments and entered its attorney fee decision on the basis that McCorkle's claims were pursued frivolously. The district court awarded Northwestern $49,388.50 in attorney fees and $47 in nondiscretionary costs to be paid by Sheldon Jackson, III, McCorkle's lead counsel, as a sanc-

tion under I.C. § 12–123(1)(b)(ii) and (2)(d).[2] McCorkle appeals.

## II.

## ANALYSIS

### A. Summary Judgment

McCorkle contends that the district court erred in granting summary judgment on his claims of misrepresentation and fraud against Northwestern. Specifically, McCorkle asserts that summary judgment was erroneous because Northwestern did not present any evidence to support the district court's finding that by the summer of 1999, McCorkle knew the facts constituting Northwestern's alleged fraud.

We first note that summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.,* 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App.1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.,* 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint School Dist.,* 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct.App.1994).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox,* 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct.App.1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder,* 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct.App.1994). Such an absence of evidence may be established ei-

ther by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini–Mart, Inc.,* 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct.App.2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders,* 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick,* 126 Idaho at 312, 882 P.2d at 479.

A three-year statute of limitation for fraud is established by I.C. § 5–218(4). The statute does not begin to run until the plaintiff knew or reasonably should have known of the facts constituting the fraud. *McCoy v. Lyons,* 120 Idaho 765, 820 P.2d 360

---

**2.** The district court also awarded Wilde attorney fees against McCorkle. These fees are no longer

at issue in this appeal as a result of the voluntary dismissal.

(1991). Application of I.C. § 5–218(4) does not depend on when the plaintiff should have been aware that something was wrong; as used in the statute, "discovery" means the point in time when the plaintiff had actual or constructive knowledge of the facts constituting the fraud. *McCoy,* 120 Idaho at 773, 820 P.2d at 368. Actual knowledge will be inferred if the allegedly aggrieved party could have discovered the fraud by the exercise of due diligence. *Nancy Lee Mines, Inc. v. Harrison,* 95 Idaho 546, 547, 511 P.2d 828, 829 (1973); *Gerlach v. Schultz,* 72 Idaho 507, 514, 244 P.2d 1095, 1099 (1952); *Mason v. Tucker and Associates,* 125 Idaho 429, 435, 871 P.2d 846, 852 (Ct.App.1994). The question of when the plaintiff discovered the fraud is generally a question for the jury and summary judgment on the issue is only appropriate if there is no factual dispute about when this discovery occurred. *McCoy,* 120 Idaho at 774, 820 P.2d at 369.

▬ With respect to McCorkle's claims for fraud, the complaint alleged that Wilde had made two misrepresentations about the policy and that McCorkle had relied on these misrepresentations in purchasing the policy. The first misrepresentation was that "no additional premiums would be due after four (4) years because, at that point, the dividends would 'carry the policy.'" Second, the complaint alleged, "because of Mr. Wilde's representations as to the strength and viability of Northwestern, Mr. McCorkle purchased the policy and made the premium payments as indicated." The district court relied on the July 1999 letter written by McCorkle as evidence that, as of the date of the letter, McCorkle was aware of the facts giving rise to the fraud alleged in McCorkle's complaint. The letter details the representations made to and payments made by McCorkle, as well as his position that *he believed the policy was grossly misrepresented.* McCorkle states in this letter that his policy is about to lapse and that he is willing to take legal action against Northwestern. McCorkle did not come forward with evidence to contradict the assertions of Northwestern that this letter established McCorkle's knowledge of any misrepresentations. A party against whom summary judgment is sought may not merely rest on allegations contained in his pleadings,

but must come forward and produce evidence to contradict the assertions of the moving party and establish a genuine issue of material fact. *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 791 P.2d 1285 (1990). Because McCorkle failed to show that a genuine issue of material fact remained as to when he discovered the fraud, it was not error for the district court to grant Northwestern summary judgment.

**B. Attorney Fees**

▬ McCorkle contends that the district court abused its discretion by awarding attorney fees to Northwestern as a sanction against attorney Jackson. This Court reviews a decision regarding whether to award attorney fees for an abuse of discretion, and the burden is on the person asserting error to show an abuse of discretion. *Merrill v. Gibson,* 139 Idaho 840, 843, 87 P.3d 949, 952 (2004); *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

▬ After the district court entered summary judgment, Northwestern sought attorney fees and costs on the basis that it was the prevailing party and that McCorkle filed the action frivolously and defended it without foundation. Northwestern sought attorney fees and costs pursuant to I.C. § 41–1839(4) and I.R.C.P. 54(d)(1)(B) and (e)(1). McCorkle argues that the district court erred in determining that the claims were pursued frivolously, and also that the district court erred in awarding attorney fees to Northwestern pursuant to I.C. § 41–1839(4) because McCorkle's fraud based claims did not

involve disputes arising under the terms of the policy.

First, we address McCorkle's assertion that the district court erred in awarding fees to Northwestern under I.C. § 41–1839(4). Idaho Code Section 41–1839(4) states, in relevant part:

Notwithstanding any other provision of statute to the contrary, this section and section 12–123, Idaho Code, shall provide the exclusive remedy for the award of statutory attorney's fees in all actions between insureds and insurers involving disputes arising under policies of insurance. Provided, attorney's fees may be awarded by the court when it finds, from the facts presented to it that a case was brought, pursued or defended, frivolously, unreasonably or without foundation.

The interpretation of a statute is an issue of law over which we exercise free review. *Corder v. Idaho Farmway, Inc.*, 133 Idaho 353, 358, 986 P.2d 1019, 1024 (Ct.App.1999). When interpreting a statute, we will construe the statute as a whole to give effect to the legislative intent. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539–40, 797 P.2d 1385, 1387–88 (1990); *Corder*, 133 Idaho at 358, 986 P.2d at 1024. The plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Messenger*, 118 Idaho at 540, 797 P.2d at 1388; *Corder*, 133 Idaho at 358, 986 P.2d at 1024.

McCorkle asserts that an award of attorney fees under this statute was in error because the causes of action arose from the fraudulent actions of Northwestern and their agent, not under the terms of the insurance policy. Attorney fees are not limited under I.C. § 41–1839(4) to just policy claims cases, as McCorkle suggests. Rather, the plain meaning of the statute grants fees in all actions between insureds and insurers involving "disputes arising under policies of insurance" and does not limit those disputes to policy claims-based cases. *See Hayden Lake Fire Protection Dist. v. Alcorn*, 141 Idaho 307, 109 P.3d 161 (2005) (I.C. § 41–1839(4) applies to litigation "originating" from insurance policies). The claim of fraud in this case stems and originates directly from the purchase of an insurance policy. Without the purchase of the policy and the subsequent discovery that the terms of the policy varied from the terms represented by Wilde, McCorkle would not have had a potential basis for a cause of action. The district court, therefore, did not err in analyzing the award of attorney fees to Northwestern under I.C. § 41–1839(4).

We next consider the merits of whether the district court erred in awarding attorney fees. Idaho Code Section 41–1839(4) provides the authority for an award of attorney fees in disputes between an insured and the insurer when a court finds that the case was "brought, pursued, or defended frivolously, unreasonably or without foundation." This statute and I.C. § 12–123 combine to provide the exclusive remedy for the award of attorney fees for either the insured or the insurer involving disputes arising under policies of insurance. I.C. § 41–1839(4). The entire course of litigation is taken into account when determining whether attorney fees are appropriate; therefore, when a claim involves multiple claims and defenses, it is not appropriate to segregate claims and defenses to determine which were pursued or defended frivolously. *Pocatello Auto Color, Inc. v. Akzo Coatings, Inc.*, 127 Idaho 41, 48, 896 P.2d 949, 956 (1995). In order to award attorney fees on the basis of frivolous claims in an action involving multiple claims, each claim in the action must be determined frivolous.

Other than McCorkle's claims for fraud, the claims made in the complaint were admittedly without merit. McCorkle's fraud-based claims were also determined frivolous by the district court on the basis of the July 1999 letter brought to its attention by Northwestern. The district court found that McCorkle's counsel was aware that the letter existed and that it created a statute of limitations problem, but that he chose not to introduce it or even address it in his response. The court took great umbrage over the fact that counsel *knew* about this letter and *failed* to disclose it to the court in his response to the motion to dismiss/summary judgment. The district court claimed that Jackson in effect

"withheld" and was "concealing" the letter, stating it was "quite disturbed by [his] lack of candor."

Nonetheless, in its memorandum decision on attorney fees, the district court recognized that this sanction for frivolous litigation is problematic and rarely done. The court went on to note that, "it could be argued that merely filing the case, even with the clear statute of limitations problem which McCorkle's attorney, Jackson, recognized at the outset, was not frivolous *on its face*." We agree with the district court's preliminary assessment.

McCorkle's lead attorney had no legal or ethical obligation to disclose this letter to the court and opposing counsel when the original was in the possession and control of Northwestern. Moreover, at this stage of the proceedings, no active discovery had even taken place. Neither McCorkle nor his attorney denied the existence or authenticity of the letter, which was first placed before the trial court as part of Northwestern's reply submission to its own motion to dismiss/summary judgment. One week later the trial court granted the motion in a written decision. Prior to that time, it was Northwestern's consistent legal position that the statute of limitations began to run three years from the date the original insurance policy was issued in 1983.

Given the issue on summary judgment as framed by Northwestern; the stage of the proceedings; the lack of any formal discovery; the acknowledged complexity of this type of first-impression case, the so-called "vanishing premium"; the series of confusing documentations and agent explanations concerning the "product"; coupled with Idaho law requiring discovery of the "actual facts" forming the basis of the tort until the loss occurs, we conclude that it was an abuse of discretion to award attorney fees as a sanction against lead counsel where no legal or ethical duty to disclose existed. Accordingly, we reverse the award of attorney fees as a sanction.

### C. Attorney Fees on Appeal

Northwestern has requested an award of attorney fees on appeal pursuant to I.C.

§ 41–1839(4). Such an award is appropriate when the court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *Trinity Universal Insurance Co. v. Kirsling*, 139 Idaho 89, 94–95, 73 P.3d 102, 107–08 (2003); *Howard v. Oregon Mutual Insurance Co.*, 137 Idaho 214, 219, 46 P.3d 510, 515 (2002). As we have reversed the district court's award of attorney fees, we cannot conclude that McCorkle's appeal was brought frivolously, unreasonably or without foundation. Attorney fees are therefore denied to Northwestern on appeal.

### III.

### CONCLUSION

For the reasons set forth above, the district court's grant of summary judgment is affirmed; however the award of attorney fees is reversed. Neither party is awarded costs or attorney fees on appeal.

Chief Judge PERRY, and Judge SCHWARTZMAN concur.

