851 P.2d 972

**Patrick J. LARGE and Evelyn Ruth, Plaintiffs–Appellants,**

**v.**

**CAFFERTY REALTY, INC., an Idaho corporation; Diversified Properties, Inc., an Idaho corporation (doing business as Century 21 AA Realty); Danny M. Cafferty; Mike Hall; John Amyx; Charles Q. and Barbara M. Claude, husband and wife, Defendants–Respondents.**

**No. 19472.**

Supreme Court of Idaho, Boise, January 1993 Term.

April 29, 1993.

Givens, Pursley, Webb & Huntley, Boise, for plaintiffs-appellants, Patrick J. Large and Evelyn Ruth. Patrick J. Miller argued.

Eberle, Berlin, Kading, Turnbow & McKleen, Chtd., Boise, for defendants-respondents, Diversified Properties, Inc., Mike Hall and John Amyx. Stephen A. Bradbury argued.

Ringert, Clark, Harrington, Reid, Christenson & Kaufman, Boise, for defendants-respondents, Charles Q. and Barbara M. Claude. James G. Reid argued.

Imhoff & Lynch, Boise, for defendants-respondents, Cafferty Realty, Inc. and Danny M. Cafferty. Patrick D. Furey argued.

JOHNSON, Justice.

This is a real estate case. It concerns the purchase of property that is subject to restrictive covenants providing that no structures placed on the property shall be used for commercial purposes.

In reversing the summary judgments, we hold that I.C. § 55–811 (the record as notice statute) does not preclude an action by a purchaser of real property against the seller and realtors for misrepresentation concerning the availability of the property for commercial purposes. In reversing the judgment following trial, we hold that the parol evidence rule does not exclude evidence of the relationship between a realtor and a purchaser because an earnest money agreement refers to the realtor as the seller's agent. In addition, we consider application of the "duplicates rule" contained in I.R.E. 1001, 1002, and 1003 and the foundation necessary for admission of a document under the business records exception to the hearsay rule contained in I.R.E. 803(6).

I.

**THE BACKGROUND AND PRIOR PROCEEDINGS.**

Patrick J. Large and Evelyn Ruth (Large) purchased the real property at issue in this case (the property) from Charles Q. and Barbara M. Claude (the Claudes). Prior to the sale, the Claudes employed Diversified Properties, Inc. (Diversified) to list the property. Mike Hall was the real estate agent who listed the property for Diversified. John Amyx was the real estate broker for Diversified. Diversified listed the property through the Multiple Listing Service (MLS), which circulates information to subscribing real estate agents concerning properties for sale. Danny M. Cafferty (Cafferty), a real estate agent for Cafferty Realty, Inc. (Cafferty Realty), was the real estate agent who effected the sale.

Large and Cafferty first met when Large went to inspect other property located in the same area as the property. Cafferty represented another potential buyer for the other property. While inspecting the other property, Large discussed his plans to locate a mini-storage unit in the area and rejected the other property as inappropriate for the mini-storage unit. The next day, Cafferty contacted Large regarding the property owned by the Claudes. Cafferty visited Large's office to discuss the property, and Cafferty and Large went to view the property.

Cafferty learned of the availability of the property through the MLS listing prepared by Hall for Diversified. The MLS listing stated that the property was zoned for

residential use, but could be rezoned for commercial use. The MLS listing also had a "Y" in a blank following "Cov. & Restricins," indicating that the property was encumbered by restrictive covenants. The MLS listing did not disclose the nature of the restrictive covenants. Large did not see the MLS listing.

Cafferty knew Large intended to operate a mini-storage business on the property and informed Large that the property was currently zoned for residential use, but could be rezoned for commercial use. Cafferty then prepared an earnest money agreement to present to the Claudes. The earnest money agreement was a standard form agreement that Cafferty completed by filling in the blanks. Large initially made the purchase contingent upon a rezone of the property for commercial use. In an addendum to the earnest money agreement, Large removed the contingency in exchange for immediate access to the property. Large and the Claudes each signed the earnest money agreement and the addendum.

Large then petitioned the county planning and zoning commission (the commission) to rezone the property from residential use to commercial use. On May 25, 1989, the commission held a hearing regarding Large's request for rezoning. Large and Cafferty attended the hearing together. After the hearing, Large and Cafferty went to a local lounge for drinks. There, Cafferty presented Large with a written proposal to become a financing partner in Large's mini-storage business. Cafferty and Large disagree whether they discussed the existence of restrictive covenants that would restrict the use of the property for commercial purposes. Cafferty says they did; Large says they did not.

The closing was set for June 1, 1989. The earnest money agreement provided that the seller would provide the buyer with a preliminary title report showing the condition of the title prior to closing. Either Cafferty or Diversified contacted the title company and requested preparation of a preliminary title report. The preliminary title report disclosed the existence and con-

tent of the restrictive covenants and had a copy of these covenants attached. Large did not receive a copy of the preliminary title report. The title company delivered a copy of the preliminary title report to Diversified. Diversified did not provide a copy to Large. Cafferty testified at trial that he did not receive a copy of the preliminary title report from the title company.

The closing proceeded as scheduled on June 1, 1989, with the title company acting as closing agent. The escrow officer who presided at the closing was not the one who prepared the documents for the closing and did not provide Large with a copy of the preliminary title report at the closing. No one at the closing discussed the restrictive covenants. The Claudes produced a warranty deed for the property. The deed referred to a plat of the subdivision, but did not mention any restrictive covenants.

Large claimed he first learned of the existence of the restrictive covenants after the closing when he received a letter from an attorney representing some neighboring property owners. The letter threatened suit to enforce the covenants should Large proceed with placing the mini-storage unit on the property. Large then withdrew the petition for rezoning and later listed the property for sale.

Large sued Cafferty, Cafferty Realty, Diversified, Diversified's agents Hall and Amyx, and the Claudes, alleging negligence against Cafferty and Cafferty Realty, misrepresentation against all the defendants, and breach of contract against the Claudes.

Each defendant moved for summary judgment. The trial court granted summary judgment in favor of the Claudes and Diversified on the misrepresentation claim. The trial court ruled that the Claudes and Diversified had no duty to disclose to Large any information concerning restrictions on the use of the property unless the information was not equally obtainable by Large. The trial court ruled that the restrictive covenants in this case were equally obtainable because they were recorded, and I.C. § 55–811 gave Large constructive

notice of all recorded covenants and restrictions.

The trial court initially denied the Claudes summary judgment on the breach of contract claim. Later, however, the trial court granted the Claudes summary judgment on this claim after the Claudes brought another motion, and after Large filed a consent to dismiss the claim with prejudice.

The trial court denied Cafferty and Cafferty Realty summary judgment. Although the trial court stated that summary judgment based on constructive notice under I.C. § 55–811 was appropriate for Cafferty and Cafferty Realty, the trial court ruled there was a material issue of fact whether Cafferty and Cafferty Realty were acting as Large's agent and as Large's agent owed Large a fiduciary duty of care.

Large proceeded to trial against Cafferty and Cafferty Realty. Before the trial began, Cafferty and Cafferty Realty filed a motion in limine to exclude testimony inconsistent with the agency clause in the earnest money agreement, which stated that Cafferty was representing the "Seller." The trial court ruled that the parol evidence rule barred evidence contradicting the agency clause in the earnest money agreement and prohibited Large from presenting any evidence that would tend to establish that Cafferty was an agent of Large before the agreement was signed by Large on April 1, 1989. The trial court allowed Large to introduce any evidence concerning the agency relationship between Large and Cafferty after April 1, 1989.

The jury found Cafferty was not negligent in his dealings with Large, and the trial court entered judgment in favor of Cafferty and Cafferty Realty. Large appealed.

## II.

### THE TRIAL COURT IMPROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF DIVERSIFIED AND THE CLAUDES ON THE MISREPRESENTATION CLAIM.

■ Large asserts the trial court improperly relied on the constructive notice provisions of I.C. § 55–811 as the basis for summary judgment on the misrepresentation claim against Diversified and the Claudes. We agree.

The trial court granted Diversified and the Claudes summary judgment based on the constructive notice provisions of I.C. § 55–811. This statute provides, in part:

> Every conveyance of real property acknowledged or proved, and certified, and recorded as prescribed by law, from the time it is filed with the recorder for record, is constructive notice of the contents thereof to subsequent purchasers and mortgag(e)es.

I.C. § 55–811.

The trial court reached the issue of constructive notice through its ruling that a seller and the seller's agent do not have a duty to disclose information to the buyer concerning the suitable uses for the land unless: (1) the seller or the seller's agent knows or has reason to know the uses for which the buyer was purchasing the land and that the uses are not feasible on the land; and (2) the seller or the seller's agent knows or has reason to know that the buyer does not know of the condition on the land making the land unsuitable, and the buyer did not have an equal opportunity to obtain information about the land which would have revealed the unsuitability of the land.

The trial court ruled that Diversified and the Claudes did not have a duty to disclose the existence of the restrictive covenants because Large had an equal opportunity to discover the restrictive covenants, which were of record. The trial court reasoned that I.C. § 55–811 gave Large constructive notice of the contents of the recorded documents.

This Court recently addressed the purposes of our recording statutes in *Haugh v. Smelick*, 1993 WL 16386. In *Haugh*, the Court said:

> We have explained that "[t]he primary purpose of the recording statutes is to

give notice to others that an interest is claimed in real property, and thus give protection against *bona fide* third parties who may be dealing in the same property." *Matheson v. Harris*, 98 Idaho 758, 761, 572 P.2d 861, 864 (1977). It follows that whenever constructive notice is imparted to a subsequent purchaser of real property by a recording statute, the subsequent purchaser cannot claim that he or she is a *bona fide* purchaser for value and receive protection against the contents of the recorded instruments. *Merchants Trust Co. v. Davis*, 49 Idaho 494, 290 P. 383 (1930).

*Id.*

The purpose and effect of I.C. § 55–811 is to protect persons with a recorded claim or lien on the property from claims by other persons who acquire an interest in the property after the interest is recorded. A purchaser of real property is obliged to make a reasonable search of the record to discover any liens and claims affecting the property to be purchased. If the purchaser fails to make an actual search of the record, I.C. § 55–811 gives the purchaser constructive notice of the contents of the recorded interests and prevents the subsequent purchaser from claiming an interest in the property adverse to the recorded interests.

I.C. § 55–811, however, is not meant to be a shield against fraud and misrepresentation. Large is not claiming a right in the property adverse to the recorded restrictive covenants. Rather, Large claims he was induced to purchase the property based on the misrepresentations of Cafferty and Diversified in failing to disclose the existence of the restrictive covenants. Large's claim for misrepresentation against the Claudes is based on the doctrine of respondeat superior. These claims do not implicate the constructive notice provisions of I.C. § 55–811, and the trial court should not have granted summary judgment on this basis.

■ Next, we must consider whether there were genuine issues of material fact concerning Large's misrepresentation claim that make summary judgment improper.

Diversified argues that on review from summary judgment we should view the facts alleged by Large in light of the clear and convincing burden of proof required in actions alleging fraud. The party alleging fraud has the burden of proving all the elements of fraud *at trial* by clear and convincing evidence. *Faw v. Greenwood*, 101 Idaho 387, 613 P.2d 1338 (1980). It does not follow, however, that this is the appropriate standard for *summary judgment*.

■ This Court has refused to apply the clear and convincing burden of proof in reviewing summary judgment in fraud and misrepresentation cases. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517–18, 808 P.2d 851, 854–55 (1991). In *G & M Farms*, the Court held that in misrepresentation cases the Court should apply the usual standard of review to determine whether there is a genuine issue of material fact making summary judgment improper. *Id.* at 518, 808 P.2d at 855.

The trial court predicated the summary judgment in favor of Diversified and the Claudes on the undisputed fact that the restrictive covenants were of record and that Large had constructive notice of them pursuant to I.C. § 55–811. The trial court also concluded that there were genuine issues of material fact whether Diversified and the Claudes knew or had reason to know that Large was buying the property for a specific purpose and that this purpose was not feasible because of the character of the property. The trial court also concluded that there was a genuine issue of material fact whether Large knew of the character of the property rendering it unsuitable for the purpose Large intended and whether Large had an equal opportunity to obtain the information about the unsuitability of the property for the intended purpose, excluding the application of I.C. § 55–811. We agree.

Diversified and the Claudes assert that Large cannot maintain an action against them because they had no affirmative duty to disclose the suitable uses of the property. This mischaracterizes the issue. Large alleges fraudulent misrepresenta-

tion, not merely failure to disclose. In response, Diversified argues that it did not make any false representation.

The statement in the MLS listing that the property could be rezoned for commercial use raises a genuine issue of material fact whether there was a false representation, because the statement could be misleading. The MLS listing, although it did disclose that restrictive covenants existed on the property, did not reveal that those restrictive covenants prohibited commercial uses on the property.

Diversified also asserts that summary judgment was proper based on the undisputed fact that Large did not see the MLS listing, and, therefore, could not have relied on the representations there. We reject this argument because Large did not necessarily have to personally see the MLS listing for there to be reliance. Under its employment agreement with the Claudes, Diversified had the right to hire sub-agents to sell the property. There is a genuine issue of material fact whether Cafferty was an agent of Diversified for the purpose of selling the property. If Cafferty were Diversified's agent, he was a sub-agent of the Claudes. If so, any misrepresentation made by Cafferty as the agent of Diversified and the Claudes would be imputed to Diversified and the Claudes.

The Claudes contend they are entitled to summary judgment because they are innocent parties who had no contact with Large and fully disclosed the restrictive covenants to Diversified. Large's claim against the Claudes, however, is based on the doctrine of respondeat superior. Whether Hall and Diversified acted outside the scope of the authority granted to Diversified by the Claudes is a genuine issue of material fact precluding summary judgment on this basis.

Diversified contends it is entitled to summary judgment because the earnest money agreement contains an inspection clause stating:

> The Buyer hereby acknowledges further that he has not received or relied upon any statements or representation by the broker or his representatives or by the Seller which are not herein expressed. The Buyer has entered into this agreement relying solely upon information and knowledge obtained from his own investigation or personal inspection of the premises.

In *Tusch Enter. v. Coffin*, 113 Idaho 37, 43, 45 n. 5, 740 P.2d 1022, 1028, 1030 n. 5 (1987), the Court pointed out that a clause similar to this one does not prevent the admission of evidence to establish misrepresentation.

Diversified and the Claudes are not entitled to summary judgment on the misrepresentation claim.

### III.

### THE TRIAL COURT IMPROPERLY EXCLUDED EVIDENCE OF AN AGENCY RELATIONSHIP BETWEEN CAFFERTY AND LARGE UNDER THE PAROL EVIDENCE RULE.

■ Large asserts the trial court improperly limited at trial evidence that would tend to establish that Cafferty was an agent for Large prior to the signing of the earnest money agreement on April 1, 1989. We agree.

Before trial, Cafferty filed a motion in limine seeking to exclude all evidence inconsistent with the earnest money agreement's provision concerning agency disclosure. This provision reads:

> At the time of signing this agreement the agent working with the buyer represented Seller [inserted in preparation of the document] and the agent working with the seller represented Seller [inserted in preparation of the document]. Each party signing this document confirms that prior written disclosure of agency was provided to him/her in this transaction. Each party to this transaction has read and understands the contents of the agency disclosure brochure previously received.

In his motion in limine, Cafferty contended that evidence inconsistent with this agreement violated I.R.E. 401, 402, and 403, because the evidence would be irrele-

vant, confusing, and prejudicial to the defendants. The trial court granted the motion in limine, basing its ruling on the parol evidence rule.

As an instrument for interpreting contract terms, the parol evidence rule can only be applied to aid the court in interpreting the terms of a contract between the parties to the contract. In *Tusch*, the Court upheld the trial court's dismissal of an express warranty action against the seller of real property based on application of the parol evidence rule, holding that the parol evidence rule barred any evidence inconsistent with a term in the earnest money agreement stating that the buyer was not relying on any representations by the seller. *Id.* at 44–45, 740 P.2d at 1029–30. More interesting, however, is the fact that in *Tusch*, the Court also upheld a dismissal of a breach of express warranty claim against the contractor who built the duplexes, not because of application of the parol evidence rule, but instead because the contractor was not a party to the contract between the buyer and the seller. *Id.* at 43, 740 P.2d at 1028. It follows that a rule of contract interpretation, like the parol evidence rule, is not applicable in the absence of a valid contract between the parties.

In this case, Cafferty was not a party to the earnest money agreement. Therefore, Cafferty may not assert the parol evidence rule against Large. The trial court should not have granted Cafferty's motion in limine.

## IV.

### THE SECOND, RE-RECORDED COPY OF A TAPE OF THE COMMISSION'S HEARING WAS PROPERLY ADMITTED INTO EVIDENCE.

█ Large asserts that the trial court should not have admitted a second, re-recorded copy of an audio tape of the planning and zoning commission's May 25, 1989 hearing. We disagree.

The original tape contained a recording of a statement made at the zoning hearing by the owner of property near the property sold to Large. The statement was that the rezoning was inappropriate because there were restrictive covenants on the property. The parties stipulated to the admission of the first re-recorded copy of the original tape. When Cafferty's attorney attempted to play the tape for the jury, the content of the tape was inaudible. That evening, Cafferty's attorney took the tape to an audio technician who re-recorded the tape. The next day, through the testimony of the commission's chair, Cafferty offered the second, re-recorded tape, which was played for the jury on a different tape player. The chair testified that the sound level of the second, re-recorded tape was a fair and accurate representation of the sound level in the hearing. Large objected claiming the tape was unfairly "enhanced" and that there was insufficient foundation and authentication to make the tape relevant. The trial court admitted the tape. Later in the trial, Cafferty presented the testimony of the technician who made the second, re-recorded copy of the tape. This technician explained that he merely applied "Dolby" in re-recording the tape to eliminate the electric hiss made by the original tape.

Large contends that I.R.E. 1003 precludes admission of the re-recorded tape and that the trial court allowed the tape to be played without adequate foundation or authentification. The parties refer to the "best evidence rule," which is codified in I.C. §§ 9–411 and 9–417. This traditional rule was expanded by the Court in I.R.E. 1001, 1002, and 1003 and is better described as the "duplicates rule." I.R.E. 1001(1) includes within the scope of the court rules all forms of duplications, including electronic recordings.

I.R.E. 1003 provides:
A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity or continuing effectiveness of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Large urges us to find that the process used in re-recording the tape was so unfair as to make the tape fall outside the scope

of permissible duplicates under I.R.E. 1003. The question is complicated in this case because Large stipulated to the admission of the first, re-recorded copy of the tape. That copy was not withdrawn, and was available for Large to play to the jury for comparison with the second, re-recorded copy of the tape. In this context, the issue is not whether it would be unfair to admit the duplicate in lieu of the original, but whether it would be unfair to admit two duplicates. Under these circumstances, it was not a violation of I.R.E. 1003 for the trial court to admit the second, re-recorded copy of the tape. Both re-recorded copies of the tape were available to be played for the jury, if Large chose to do so. It was for the jury to decide what weight to give to the two copies, in light of the testimony of the witnesses.

Whatever issue there might have been concerning the authenticity or foundation for the second, re-recorded copy of the tape was cured by the testimony of the technician who made the second copy. Although this testimony came after the trial court admitted the second copy, it provided any explanation necessary for the jury to determine whether there was any enhancement of the first copy.

## V.

### THE TRIAL COURT SHOULD HAVE ADMITTED THE PRELIMINARY TITLE REPORT.

■ Large asserts that the trial court should have admitted the preliminary title report, including the page indicating that a copy had been sent to Cafferty. We agree.

Cafferty objected to the admission of the preliminary title report, claiming that the indication a copy had been sent to Cafferty was hearsay and was not admissible under any of the exceptions to the hearsay rule. Large claimed the entire preliminary title report was within the business records exception to the hearsay rule.

In objecting to admission of the preliminary title report, Cafferty argued that there was not a proper foundation for the title page of the preliminary title report to establish a basis for admission of the report under the business records exception to the hearsay rule. Cafferty based this objection on the fact that the witness testifying to the record keeping process at the title company was not the person who prepared the report or delivered the document. In sustaining the objection, the trial court, in essence, ruled that the document was admissible only if Large could get the original delivery clerk to testify regarding actual delivery of the document. This interpretation of I.R.E. 803(6) unduly narrows the business records exception.

I.R.E. 803(6) does not require a foundation of testimony by the person who prepared the document in order to admit the document as a business record. The general requirement for admission under I.R.E. 803(6) is that the document be "produced in the ordinary course of business, at or near the time of occurrence and not in anticipation of trial." *Beco Corp. v. Roberts & Sons Const. Co.*, 114 Idaho 704, 711, 760 P.2d 1120, 1127 (1988). The comment to I.R.E. 803(6) points out:

Because records of regularly conducted activity are not normally self proving, as public records may be under Rule 803(8), the testimony of the custodian or other person who can explain the record keeping of the organization is ordinarily essential. The custodian need not have personal knowledge of the actual creation of the document nor need [the custodian] have been an employee of the business when the record was made. The test is whether [the custodian] has knowledge of the system used to make the record and not whether [the custodian] has knowledge of contents of the record.

*Report of the Idaho State Bar Evidence Committee,* C 803, p. 10 (4th Supp.1985).

The escrow officer who closed the transaction for the title company testified regarding the title company's usual practices for preparing preliminary title reports. This escrow officer also testified regarding the title company's practices in addressing and hand delivering the title reports to the real estate agents involved in the transac-

tion. This was sufficient foundation for admission of the preliminary title report pursuant to I.R.E. 803(6).

Large was prejudiced by the exclusion of the report because the jury was not allowed to see the format of the report and consider whether this raised a reasonable inference that the report was delivered to Cafferty.

## VI.

### CONCLUSION.

We reverse the trial court's grant of summary judgment dismissing Large's misrepresentation claim against Diversified and the Claudes. We also reverse the judgment in favor of Cafferty and Cafferty Realty. We remand the case to the trial court for further proceedings.

We award costs, but not attorney fees, on appeal to Large, jointly and severally against Cafferty, Cafferty Realty, Diversified, and the Claudes.

BISTLINE and TROUT, JJ., and REINHARDT and FULLER, JJ., Pro Tems, concur.