**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46721**

| | |
|---|---|
| JEFRI R. DAVIS and DEBBIE S. DAVIS, husband and wife,<br><br>    Plaintiffs-Appellants,<br><br>v.<br><br>CHARLES JOHN TUMA, DONALD J. MCCANLIES, JOHNSON HOUSE COMPANY dba COLDWELL BANKER RESORT REALTY,<br><br>    Defendants-Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Boise, April 2020 Term

Opinion Filed: 8/7/2020

Melanie Gagnepain, Clerk

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Barbara A. Buchanan, District Judge.

The order of the district court granting summary judgment is <u>reversed</u> and the judgment is <u>vacated</u>.

Arthur M. Bistline, Bistline Law, PLLC, Coeur d'Alene, for appellants.

Daniel Toby, McLaughlin, Berg, McLaughlin & Nelson, Chtd., Sandpoint, for respondents.

————————————

STEGNER, Justice.

This case arises from a 2009 purchase of real property located in rural Boundary County by Jefri and Debbie Davis (the Davises). While living in California, the Davises sought to purchase a home in northern Idaho, and hired Charles Tuma (Tuma) and Tuma's broker, Donald McCanlies (McCanlies), to help them in that endeavor. Tuma and McCanlies both worked for Johnson House Company, which in turn was doing business as Coldwell Banker Resort Realty. Some years after purchasing the property in question, the Davises learned to their distress that the road they believed provided access to their home, did not in fact do so. The Davises filed suit against Tuma, McCanlies, and Coldwell Banker Resort Realty (collectively, the Defendants), alleging fraud and constructive fraud. The Defendants moved for summary judgment against the Davises. The Davises responded, filing several declarations, portions of which the Defendants moved to strike. The Davises also sought to amend their complaint to add claims for unlicensed practice of law,

1

surveying, or abstracting; and breach of contract and violation of contractual duties. The district court granted the Defendants' motions for summary judgment and to strike, but did not specifically identify which statements were being stricken. The district court also denied the Davises' motion to amend their complaint without explanation of the reasoning behind the decision.

This timely appeal followed. For the reasons set out below, we reverse the district court's order granting the Defendants' motion for summary judgment, and vacate the district court's order denying the motion to amend. We also vacate the judgment entered and remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background.

In 2009, the Davises were living in California. In August of that year, the Davises contacted Tuma to inquire about purchasing real property in northern Idaho. Tuma was a real estate agent licensed in Idaho, working with his broker, McCanlies. The Davises told Tuma they were interested in a house and lot in Moyie Springs, Idaho, located at 984 Gray Wolf Road (the Property).

According to the Davises, the family informed Tuma of their specific needs for the property they sought. In particular, the Davises contend they told Tuma that Debbie Davis was in poor health and needed a smooth access road to the property because of her severe degenerative disc disease and multiple sclerosis.

As requested, Tuma evaluated the Property and provided a video of his site visit. Tuma used Gray Wolf Road to access the Property. Gray Wolf Road is an unpaved, gently sloping road that begins at U.S. Highway 2, and provides access to the surrounding properties before it terminates at the Property. According to Tuma, he believed (incorrectly, as it turns out) that Gray Wolf Road provided legal access to the Property.

On September 14, 2009, the Davises executed the RE-14 Buyer Representation Agreement (the Agreement). On September 17, 2009, the Davises signed the RE-21 Real Estate Purchase and Sale Agreement (REPSA). Following the signing of the REPSA, Tuma reviewed the Preliminary Title Commitment (PTC) with the Davises. Tuma also personally reviewed the Declaration of Restrictive Covenants (DRC), as well as a second survey of record showing a boundary line adjustment (Boundary Line Survey) on the northern boundary of the Property. According to Tuma, in his review of the PTC, DRC, and Boundary Line Survey, he did not notice or appreciate that

2

the only legal access to the Property was through an easement from Highway 2, and not via Gray Wolf Road. The Property's legal access is at the bottom of a steep hill which must be traversed in order to get to the home situated on the Property. During many months, the legal access to the home is extremely challenging.

The Davises purchased the Property without visiting it, acquiring it by warranty deed on October 1, 2009. Members of the Davis family subsequently resided on the Property shortly after they purchased it. They accessed the Property continuously thereafter via Gray Wolf Road.

On December 7, 2009, two months after closing, the closing agent, Jessica Fairchild (Fairchild) of Community Title, LLC, sent an email to the Davises and Tuma, attaching the Boundary Line Survey to the email. That same day, Tuma sent an email to the Davises with the aerial photograph attached. On December 8, 2009, Tuma emailed the Davises again, asking for confirmation "that everything came [through] to you ok when you get a chance?"

According to Terah Davis (Terah), Jefri and Debbie's daughter, she attempted to access the attachments to the emails, but did not recall exactly when. In her declaration, Terah stated that she remembered opening the aerial photograph attachment, "thinking it was a neat image, but otherwise having no idea what the emails were or why they were being sent." According to Terah, when she attempted to open the Boundary Line Survey attachment, the "computer immediately crashed. It was gone." Terah stated that the computer "never worked properly after that day" and that the family "ended up throwing it away shortly after[.]" According to Terah, she "did not download that attachment again on [the] new computer" because she had been advised against doing so.

In July 2016, nearly seven years after the Davises had moved to Idaho and continuously resided on the Property, they received a letter advising them to cease and desist their use of Gray Wolf Road. The letter was from an attorney representing the adjacent property owners, Scott and Maria Gray (the Grays). The letter stated that the Davises did not have legal access to the Property via Gray Wolf Road. The letter stated that according to the Record of Survey, Gray Wolf Road was an access and utility easement which terminated at the northernmost point of the Grays' property. The letter gave the Davises thirty days to develop another means of access to their property. On August 29, 2016, the Grays physically blocked Gray Wolf Road, thereby precluding the Davises from accessing the Property in the manner they had during the entire time they had lived in Idaho.

According to the Davises, Debbie's health problems have forced her to stay in the house on the Property because she cannot physically endure travel down the only legal access to their property. The Davises contend that Debbie has only left the Property once since the Grays blocked Gray Wolf Road.

## B. Procedural Background.

The Davises filed suit against Tuma, McCanlies, and Coldwell Banker Resort Realty on May 10, 2018, alleging fraud and constructive fraud. In particular, the Davises alleged that Tuma engaged in fraud when he "intentionally and deceitfully misrepresented his capacities" to identify access routes to properties and to review the PTC, and "deliberately and intentionally lied and deceived the Davises when he willfully and falsely stated that he had reviewed the PTC and [DRC] and determined the Davises had nothing to be concerned about." Alternatively, the Davises contended that at the very least Tuma had engaged in constructive fraud by failing to identify the Property's access problems and appropriately reviewing the PTC and DRC.

On June 5, 2018, the Defendants answered the complaint. The Defendants asserted multiple affirmative defenses. The Defendants contended that by alleging negligent misrepresentation, the Davises were pleading a cause of action not recognized under Idaho law except in the narrow confines of a professional relationship involving an accountant. The Defendants also asserted that the Davises' claims for fraud and constructive fraud were barred by the applicable statute of limitations under Idaho Code section 5-218, which (according to the Defendants) expired three years after the Davises purchased the Property.

On October 1, 2018, the Defendants moved for summary judgment. The motion was supported by declarations from Tuma and the Defendants' counsel, as well as discovery responses provided by the Davises. The Defendants argued that the Davises' claims of fraud and constructive fraud were governed by a three-year statute of limitations, which had run by late 2012 because the Davises had (1) constructive notice of the legal access to the Property at the purchase date, October 1, 2009; and (2) actual notice when they received the Boundary Line Survey on December 7, 2009.

On November 23, 2018, the Davises filed a memorandum in opposition to summary judgment, along with declarations from Debbie, Terah, and Jefri Davis.[1] In their declarations, the Davises contended that there were material omissions in Tuma's explanation of his review of the

---

[1] Portions of these three declarations were materially identical to each other, and detailed the process leading to the purchase of the Property, the events surrounding receipt of the December 7, 2009, email, as well as the effect on the Davises of the Grays' blocking of Gray Wolf Road and preventing the Davises from accessing their property.

PTC, DRC, and Boundary Line Survey. The Davises argued that they had established the required elements of constructive fraud because Tuma's representations had been made in "ignorance of [the statements'] truth[,]" and because Tuma "was professionally bound to provide a high level of care[,]" and had "convinced the Davises that he had exercised care in all elements of the transaction for which he took a part." The Davises also asserted that their constructive fraud claim only required establishing that they were in a relationship of trust and confidence with the Defendants. In addressing the Defendants' statute of limitations argument, the Davises contended that they "never viewed the survey attachment" that had been emailed to them. Relying on *Large v. Cafferty Realty, Inc.*, 123 Idaho 676, 851 P.2d 972 (1993), the Davises also argued that Idaho's constructive notice recording laws—the basis for the Defendants' statute of limitations affirmative defense— did not shield realtors from liability for actual or constructive fraud. Finally, the Davises asserted that the doctrine of equitable estoppel prevented the Defendants from asserting the statute of limitations as a defense.

The Davises also filed a motion to amend their complaint. They sought to add a count of "unlicensed practice of law, surveying, and/or abstracting[,]" as well as a count of "breach of contract and violation of unwaivable statutorily imposed contractual duties." The Davises also moved for relief from the pretrial order, asserting that there was good cause due to unique legal and factual issues, and that the new claims were tightly tied to the previously asserted facts.

The Defendants responded, arguing that the statute of limitations for both actual and constructive fraud causes of action began to run when the Davises "reasonably should have known[] of the facts constituting the fraud." The Defendants maintained that had the Davises exercised due diligence, they would have discovered that legal access to the Property was not through Gray Wolf Road. The Defendants contended that *Large* did not apply because it was not a case about the statute of limitations for a fraud claim. The Defendants also moved to strike portions of the declarations of Debbie, Terah, and Jefri Davis. The Defendants asserted that "[p]ortions of those Declarations contain inadmissible testimony and must be stricken[.]"

Finally, the Defendants objected to the Davises' motion to amend their complaint. The Defendants asserted first that the Davises' motion was untimely and unsupported by good cause. The Defendants reiterated that the newly asserted claim of breach of contract was also barred by the applicable statute of limitations. The Defendants argued that the claim of "unlicensed practice of law, surveying, or abstracting" was not supported by the common law or Idaho statutes, but

5

would be most analogous to a claim of negligence per se or professional negligence, and would be time-barred by the applicable statutes of limitations. The Defendants also asserted that equitable estoppel did not apply to toll the statutes of limitation because "one may not assert estoppel based upon another's misrepresentation if the one claiming estoppel had readily accessible means to discover the truth." (Quoting *Winn v. Campbell*, 145 Idaho 727, 732, 184 P.3d 852, 857 (2008)).

A hearing on the various pending motions was held on December 7, 2018. Arguments focused on the statute of limitations defense, the applicable law regarding constructive notice as it relates to the statute of limitations, and equitable estoppel. At the end of the hearing, the district court stated that it would issue a written decision, but believed that the statute of limitations barred the Davises' claims.

On December 14, 2018, the district court entered its memorandum decision and order granting the Defendants' motion for summary judgment. The district court also granted the Defendants' motion to strike portions of the declarations of Debbie, Terah, and Jefri Davis. In doing so, the district court wrote:

> The defendants have moved the [c]ourt for an order striking portions of the Declarations of Debbie S. Davis, Terah Davis, and Jefri R. Davis, filed on November 23, 2018, on the grounds that certain statements contained in the Declarations are not admissible in evidence.
> Upon review of said Declarations, the [c]ourt finds that they are replete with inadmissible evidence, in contravention of Idaho Rule of Civil Procedure 56(c)(4). Without itemizing each violation, as there are many, this [c]ourt shall simply grant Defendants' Motion to Strike as to all inadmissible portions of the Declarations of Debbie S. Davis, Terah Davis, and Jefri R. Davis.

The district court then concluded that the Davises' fraud and constructive fraud claims were time-barred by the applicable statute of limitations. The district court relied on *West Wood Investments, Inc. v. Acord*, 141 Idaho 75, 106 P.3d 401 (2005), in finding that the Davises had constructive knowledge that the legal access was not Gray Wolf Road. The district court also found that "actual" knowledge of the facts constituting their fraud and constructive fraud claims could be inferred, because Fairchild had emailed the Davises the Boundary Line Survey and the Davises had not exercised due diligence.

Finally, the district court denied the Davises' motion to amend their complaint, and their motion for relief from the pretrial order. In so doing, the district court wrote: "The claims in the [Davises'] Complaint having been found to be time-barred . . . the [c]ourt denies [the Davises'] Motion to Amend Complaint and Motion for Relief From the Pretrial Order."

6

As a result, the district court granted summary judgment against the Davises, and dismissed the Davises' complaint.

The Davises timely appealed.

## II.     STANDARD OF REVIEW

"The denial of a plaintiff's motion to amend a complaint to add another cause of action is governed by an abuse of discretion standard of review." *Windom v. State*, 162 Idaho 417, 421, 398 P.3d 150, 154 (2017) (quotation omitted). "A court may consider whether the allegations sought to be added to the complaint state a valid claim in determining whether to grant leave to amend the complaint." *Id.* (quoting *Estate of Becker v. Callahan*, 140 Idaho 522, 527, 96 P.3d 623, 628 (2004)). "Furthermore, '[t]his Court exercises free review over the district court's conclusions of law.'" *Valiant Idaho, LLC v. JV L.L.C.*, 164 Idaho 280, 290, 429 P.3d 168, 178 (2018) (alteration in original) (quoting *Shawver v. Huckleberry Estates, LLC*, 140 Idaho 354, 363, 93 P.3d 685, 694 (2004)).

"When reviewing a grant of summary judgment, this Court employs the same standard as the district court." *Fischer v. Croston*, 163 Idaho 331, 335, 413 P.3d 731, 735 (2018) (quoting *Idaho Youth Ranch, Inc. v. Ada Cty. Bd. of Equalization*, 157 Idaho 180, 182, 335 P.3d 25, 27 (2014)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "When a party moves for summary judgment the opposing party's case must not rest on mere speculation because a mere scintilla of evidence is not enough to create a genuine issue of fact." *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991) (citation omitted).

"Evidence presented in support of or in opposition to a motion for summary judgment must be admissible. This threshold question of admissibility of evidence must be decided 'before proceeding to the ultimate issue, whether summary judgment is appropriate.'" *Nield v. Pocatello Health Servs., Inc.*, 156 Idaho 802, 814, 332 P.3d 714, 726 (2014) (internal citations omitted) (quoting *Bromley v. Garey*, 132 Idaho 807, 811, 979 P.2d 1165, 1169 (1999)).

To determine if a trial court has abused its discretion, this Court considers "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted).

### III.    ANALYSIS

## A. The district court erred in granting summary judgment against the Davises.

The district court granted summary judgment against the Davises on their claims of fraud and constructive fraud, concluding that both claims were time-barred because they had not been pursued within the statute of limitations.[2] The district court did so by finding that the Davises had constructive knowledge of their lack of legal access to the Property upon purchasing it, and "actual" knowledge when the Davises were emailed the Boundary Line Survey. In particular, the district court concluded the Davises had constructive knowledge because the instruments showing the Davises' legal access to the Property—the Survey of Record, the DRC, and the Boundary Line Survey—were all recorded, relying on *West Wood Investments, Inc.*, 141 Idaho at 75, 106 P.3d at 401. The district court alternatively found that the Davises had either constructive or actual knowledge when they were emailed the Boundary Line Survey two months after closing because the Davises had not exercised due diligence in ensuring they saw the contents of the Boundary Line Survey. In its ruling, the district court relied on *McCorkle v. Northwestern Mutual Life Insurance Company*, 141 Idaho 550, 555, 112 P.3d 838, 843 (Ct. App. 2005).

In Idaho, a claim for actual fraud requires establishment of nine elements by clear and convincing evidence. *See Doe v. Boy Scouts of Am.*, 159 Idaho 103, 108, 356 P.3d 1049, 1054 (2015).

> [A] party must prove each of the following elements: (1) a statement or representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge about its falsity or ignorance of its truth; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.

---

[2] Before granting summary judgment, the district court also granted the Defendants' motion to strike portions of the declarations submitted by Debbie, Terah, and Jefri Davis. The district court's reasoning is cursory and unspecific: "[T]he [c]ourt finds that they are replete with inadmissible evidence, in contravention of Idaho Rule of Civil Procedure 56(c)(4). Without itemizing each violation, as there are many, this [c]ourt shall simply grant Defendants' Motion to Strike as to all inadmissible portions of the Declarations of Debbie S. Davis, Terah Davis, and Jefri R. Davis." The district court did not identify which portions of the declarations were being struck, and did not provide any reasoning as to why they were inadmissible. We have repeatedly stated that such a failure to make threshold evidentiary decisions before deciding a summary judgment motion is an abuse of discretion, one ordinarily requiring remand for appropriate findings. *Montgomery v. Montgomery*, 147 Idaho 1, 6, 205 P.3d 650, 655 (2009). However, the Davises did not raise this issue on appeal. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("[A]n assignment of error is not argued and supported in compliance with the [Idaho Appellate Rules], it is deemed to be waived."). Further, because the district court erred as a matter of law in its analysis of constructive notice, its grant of summary judgment is reversed and the case is being remanded on a different basis.

*Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 847, 419 P.3d 1139, 1145 (2018) (citing *Frontier Dev. Grp., LLC v. Caravella*, 157 Idaho 589, 594, 338 P.3d 1193, 1198 (2014)). A claim for constructive fraud is established by proving the elements of fraud, except for the knowledge of falsity (the fourth element) and the intent to induce reliance (the fifth element). *Country Cove Dev., Inc. v. May*, 143 Idaho 595, 601, 150 P.3d 288, 294 (2006).

The same statute of limitations applies to fraud and constructive fraud. *Doe*, 159 Idaho at 110, 356 P.3d at 1056. Idaho Code section 5-218(4) requires that actions for fraud and constructive fraud must be brought within three years of "the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." I.C. § 5-218(4). "The discovery rule applicable to fraud requires more than an awareness that something may be wrong but requires knowledge of the facts constituting fraud." *McCoy*, 120 Idaho at 773, 820 P.2d at 368 (citing *Nancy Lee Mines, Inc. v. Harrison*, 95 Idaho 546, 547, 511 P.2d 828, 829 (1973)).

> 1. Record-as-notice is not generally constructive notice for purposes of commencing the statute of limitations for fraud claims.

The Davises argue that the principle of constructive notice is inapplicable to shield a person from a claim for fraud based on misrepresentation of the contents of recorded documents. *See Large*, 123 Idaho at 680, 851 P.2d at 976; *Eastwood v. Standard Mines & Milling Co.*, 11 Idaho 195, 81 P. 382 (1905). The Defendants do not squarely address the Davises' reliance on *Large*, but respond that "constructive notice" is a broader concept than found in Idaho's "record-as-notice" statute.

"A purchaser is charged with every fact shown by the records and is presumed to know every other fact which an examination suggested by the records would have disclosed." *W. Wood Invs., Inc.*, 141 Idaho at 86, 106 P.3d at 412. This is a "long-established" principle by which this Court imputes constructive notice of every fact shown by the records, and what an examination of the records would have disclosed. *See Kalange v. Rencher*, 136 Idaho 192, 195, 30 P.3d 970, 973 (2001). Recorded conveyances that will impute constructive notice include recorded boundary line adjustments and recorded covenants and restrictions. *See Adams v. Anderson*, 142 Idaho 208, 210, 127 P.3d 111, 113 (2005); *W. Wood Invs., Inc.*, 141 Idaho 75, 86, 106 P.3d 401, 412 (2005).

However, this Court has not held that the principle of "record-as-notice" will establish discovery for purposes of the commencement of the statute of limitations in a fraud action. In fact, this Court held in *Large* that Idaho's record-as-notice statute was "not meant to be a shield against fraud and misrepresentation." *Large*, 123 Idaho at 680, 851 P.2d at 976,

In *Large*, the plaintiffs set out to buy real property based on the representations of a real estate agent working for a realty company. *Id.* at 677, 851 P.2d at 973. The real estate agent knew that the plaintiffs intended to operate a mini-storage business on the property, and also advised the plaintiffs they could rezone the property for commercial use. *Id.* at 678, 851 P.2d at 974. However, the subject property was encumbered by covenants restricting its use to residential. The plaintiffs contended that they had never been informed of the applicable restrictive covenants, despite the real estate agent asserting they had discussed the covenants in detail. *Id.* After closing on the property, the plaintiffs sought to rezone it for commercial use. *Id.* However, in response to their rezoning request, the plaintiffs received a letter threatening suit from an attorney who represented adjacent property owners because such action violated the existing covenants. *Id.* The plaintiffs then sued the real estate agent, the realty company, and the sellers of the property, alleging, among other things, fraudulent misrepresentation. *Id.* at 679, 680, 851 P.2d at 975, 976. The district court applied Idaho's record-as-notice statute, Idaho Code section 55-811, to grant summary judgment against the plaintiffs on the fraud claim by imputing to the plaintiffs knowledge of the applicable restrictive covenants at the time of purchase. *Id.* at 679, 851 P.2d at 975.

On appeal, this Court rejected the district court's application of the record-as-notice statute to charge the plaintiffs with knowledge of the facts constituting fraud, turning to the purpose of the record-as-notice principle:

> The purpose and effect of I.C. § 55–811 is to protect persons with a recorded claim or lien on the property from claims by other persons who acquire an interest in the property after the interest is recorded. A purchaser of real property is obliged to make a reasonable search of the record to discover any liens and claims affecting the property to be purchased. If the purchaser fails to make an actual search of the record, I.C. § 55–811 gives the purchaser constructive notice of the contents of the recorded interests and prevents the subsequent purchaser from claiming an interest in the property adverse to the recorded interests.
>
> I.C. § 55–811, however, is not meant to be a shield against fraud and misrepresentation. Large is not claiming a right in the property adverse to the recorded restrictive covenants. Rather, Large claims he was induced to purchase the property based on the misrepresentations of [the real estate agent and realty company] in failing to disclose the existence of the restrictive covenants.

*Large*, 123 Idaho at 680, 851 P.2d at 976.

The reasoning in *Large* applies here. Whatever the source of the principle of record-as-notice—case law or statute—it is not sufficient to begin the running of the statute of limitations in a fraud claim. This holding is in keeping with our expressed reluctance to "infer knowledge of

10

fraud." *McCoy*, 120 Idaho at 773, 820 P.2d at 368. While the contents of applicable recorded instruments may factor into what could have been discovered by the exercise of due diligence,[3] record-as-notice does not apply to *per se* establish constructive notice for purposes of the statute of limitations. Accordingly, the district court erred in imputing to the Davises knowledge of the facts constituting the alleged fraud upon purchase of the property in October 2009.

2. <u>There is a genuine issue of material fact for the jury as to whether the Davises could have discovered the facts constituting the alleged fraud through the exercise of due diligence in December 2009.</u>

In addition to relying on "record-as-notice" and *West Wood Investments, Inc.*, 141 Idaho 75, 106 P.3d 401, the district court alternatively held that the Davises could have discovered the facts constituting the alleged fraud by exercising due diligence with respect to the email attachment containing the Boundary Line Survey and aerial photograph. (The district court mistakenly called this "actual" knowledge. A more accurate characterization of this holding is "constructive" knowledge, because the court's analysis below relies on what the Davises *could* have discovered by the exercise of due diligence.)

On appeal, the Davises contend that the district court erred by deciding at summary judgment that the Davises had not exercised due diligence. The Davises argue that there is a genuine issue of material fact as to whether they exercised due diligence "when they did not open an [email] attachment" two months after closing on the Property. The Defendants contend that the Davises failed to exercise *any* diligence at all regarding the documents they received.

Constructive knowledge of the facts constituting a fraud may start the statute of limitations for purposes of determining the timeliness of a fraud claim. *Doe*, 159 Idaho at 111, 356 P.3d at 1057. Constructive knowledge may be imputed to a plaintiff when the fraud could have been discovered by the exercise of due diligence. *Nancy Lee Mines*, *Inc.*, 95 Idaho at 547, 511 P.2d at 829. However, "[w]here discovery of a cause of action for fraud commences the statute of limitations, the date of discovery is a fact question for the jury unless there is no evidence creating a question of fact." *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 140 Idaho 144, 150, 90 P.3d 894, 900 (2004) (citation omitted).

"The discovery rule applicable to fraud requires more than an awareness that something may be wrong but requires knowledge of the facts constituting fraud." *McCoy*, 120 Idaho at 773,

---

[3] *See, e.g.*, *Gerlach v. Schultz*, 72 Idaho 507, 514, 244 P.2d 1095, 1099 (1952).

820 P.2d at 368. Due diligence also accounts for a party's relationship with the alleged perpetrator of fraud:

> There is no reason to anticipate unfaithfulness on the part of one who stands in a fiduciary relationship and when this is so the obligation to search the records is relaxed. If a party be prevented by fraud from availing himself of the benefit of the record or is led by such means to forego an investigation of the record, no one who participates in such fraud can insist that the duty to so do be enforced.

*Gerlach*, 72 Idaho at 514, 244 P.2d at 1099.

As a preliminary matter, the date of discovery is a fact question for the jury, unless there is no evidence creating a question of fact. *Nerco Minerals Co.*, 140 Idaho at 150, 90 P.3d at 900. We conclude that there is a question of fact for the jury as to whether the Davises exercised due diligence in discovering the facts constituting the alleged fraud. First, according to the Davises, Tuma reassured them he had reviewed the relevant documents, and stated that the DRC, Survey of Record, and the Boundary Line Survey did not reveal anything the Davises should be concerned about. A jury could determine it was reasonable for the Davises to rely on Tuma's representations and not need to review in detail the recorded documents after closing for evidence to the contrary. This is particularly true given this Court's observation in *Gerlach* that "[t]here is no reason to anticipate unfaithfulness on the part of one who stands in a fiduciary relationship and when this is so the obligation to search the records is relaxed." 72 Idaho at 514, 244 P.2d at 1099. This does not suggest that Tuma was a fiduciary of the Davises. The Davises do not need to prove Tuma was a legally recognized fiduciary, because "a fiduciary relationship is only *one example* of the kind of relationship of trust and confidence that can give rise to a constructive fraud claim." *Doe*, 159 Idaho at 109, 356 P.3d at 1055 (italics added). Second, on the facts presented by the Davises, a jury could determine that it was reasonable for the Davises not to re-open the Boundary Line Survey document on the advice of the computer technician who assisted them in repairing their computer.[4]

Finally, a jury could conclude that the facts constituting the alleged fraud would not have been reasonably discoverable by the Davises upon reading the Boundary Line Survey. The Defendants' argument assumes that had the Davises looked at the Boundary Line Survey, they would have immediately become aware that the legal access to the Property was not via Gray Wolf

---

[4] The district court left the admissibility of the declarations of Terah and Debbie Davis about the computer crash and subsequent repair unclear. As noted previously, this was an abuse of discretion.

Road. A jury could conclude that, even upon viewing the Boundary Line Survey, there would be insufficient evidence that the Davises knew or should have known a fraud had been committed. *See, e.g.*, *Nerco Minerals Co.*, 140 Idaho at 151, 90 P.3d at 901. On the Record of Survey and the Boundary Line Survey, Gray Wolf Road marks the border between the various tracts, making it unclear to the untrained eye that only a portion of this road constituted a legal easement. Given this uncertainty, as well as Tuma's assurances that he had reviewed all relevant documents, a jury could conclude that the Davises would not have known from a review of the Boundary Line Survey that they could not legally access their property via Gray Wolf Road.

The Defendants contend that the Davises cannot simultaneously claim that *Tuma should have known* what the legal access to the Property was, while claiming that the legal access was not readily apparent *to the Davises* based on the Boundary Line Survey. However, this argument asks this Court to ignore the relationship which Tuma and the Davises shared. What Tuma was aware of, or *should have been aware of*, based on his claimed expertise, speaks to the merits of a claim of constructive fraud. *See Budget Truck Sales, LLC*, 163 Idaho at 847, 419 P.3d at 1145 (italics added) (noting that to sustain a fraud or constructive fraud claim, party must establish element of "the speaker's *knowledge about its falsity or ignorance of its truth*"). For purposes of the statute of limitations, whether the Davises exercised reasonable diligence is an entirely separate question taking into account the relationship between the alleged perpetrator of the fraud and his purported victims. *See Gerlach*, 72 Idaho at 514, 244 P.2d at 1099.

For the above reasons, the district court erred in finding that there was no genuine issue of material fact as to when the Davises had knowledge of the facts constituting the fraud. Therefore, we reverse the district court's grant of summary judgment on the Davises' fraud and constructive fraud claims, and remand for further proceedings.[5]

## B. The district court abused its discretion in denying the Davises' motion to amend their complaint.

After granting summary judgment against the Davises, the district court proceeded to address the Davises' motion to amend their complaint and their motion for relief from the pretrial order. The district court summarily denied these motions: "The claims in the [Davises'] Complaint

---

[5] On appeal, the Davises have also challenged the district court's decision that their implicitly-pleaded negligence claims were also time-barred. We decline to address this portion of appeal because we do not find it necessary to address a cause of action that has been "implicitly pleaded."

having been found to be time-barred (and in the case of the negligent misrepresentation claims, not recognized in Idaho), the [c]ourt denies [the Davises'] Motion to Amend Complaint and Motion for Relief From the Pretrial Order."[6]

On appeal, the Davises argue that the district court abused its discretion in denying their motion to amend their complaint. According to the Davises, the district court denied the motion to amend their complaint to add their new claims because the district court found the Davises' *originally pleaded* causes of action were time-barred. The Davises assert that it was an abuse of discretion because the district court did not analyze whether the proposed additional claims were either meritorious or time-barred as well.

A lower court abuses its discretion when it does not provide sufficient reasoning and analysis for this Court to review. *See, e.g.*, *Schultz v. Schultz*, 145 Idaho 859, 863, 187 P.3d 1234, 1238 (2008) ("Such a lack of elaboration is considered an abuse of discretion because this Court cannot review the order to determine whether the lower court acted consistently with applicable legal standards."). An abuse of discretion will be found when the lower court does not perceive the issue as one of discretion. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. Likewise, a lower court's failure to correctly identify and apply the relevant law is an abuse of discretion. *See Crowley v. Critchfield*, 145 Idaho 509, 513, 181 P.3d 435, 439 (2007).

The district court abused its discretion in denying the Davises' motion to amend their complaint. The district court did not articulate the relevant legal standard for evaluating a motion to amend a complaint. The district court provided one sentence for its reasoning. It is unclear whether the district court believed that it was required to deny the motion to amend because the *originally pleaded* claims had been found to be time-barred. If that were the reason the district court denied the motion, this ruling would be an abuse of discretion because it would be inconsistent with the legal standards that apply to determining whether an amendment to a complaint should be granted, and because the district court did not recognize its discretion in the

---

[6] The district court identified "several allegations against the defendants of negligent misrepresentation" in the Davises' complaint, and summarily dismissed any such claims against the Defendants. However, the Davises only expressly asserted fraud and constructive fraud claims in their complaint. A fraud claim is an intentional tort, while a constructive fraud claim relaxes the requirements of fraud but requires the establishment of a particular relationship between the plaintiff and defendant. *Doe*, 159 Idaho at 108, 356 P.3d at 1054. Constructive fraud claims have long been redressible in Idaho. *See, e.g.*, *Madden v. Caldwell Land Co.*, 16 Idaho 59, 100 P. 358, 360 (1909). On the other hand, negligent misrepresentation is a very narrow cause of action sounding in professional malpractice, and in Idaho has been limited to an action against an accountant. *Taylor v. Riley*, 162 Idaho 692, 697, 403 P.3d 636, 641 (2017). We recognize that there may be significant overlap between a constructive fraud and a negligent misrepresentation claim. However, they are distinct causes of action that should not be conflated.

matter. *See Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. It is also unclear whether the district court actually concluded that the *new* claims were time-barred based on its pretrial order, or lacked merit because there was no reasoning provided as to the new claims. This Court is unable to review a ruling that was not clearly made or supported by legal reasoning. As a result, the district court abused its discretion in denying the Davises' motion to amend their complaint, especially in light of Idaho Rule of Civil Procedure 15(a)(2), which directs a court to "freely give leave [to amend] when justice so requires." I.R.C.P. 15(a)(2).

Nevertheless, the Defendants argue that the district court implicitly found that the new claims were time-barred during the motion hearing. The Defendants rely on *DAFCO LLC v. Stewart Title Guaranty Company*, 156 Idaho 749, 756, 331 P.3d 491, 498 (2014), arguing that this Court should not remand the case because the reasons for denying the motion to amend complaint "*are* obvious from the record." (Italics in original.) The Defendants quote significant portions from the transcript of the motion hearing, arguing that the district court "was clearly of the opinion that all of the Davises' claims were barred by the statute of limitations, including the proposed claims set forth in its Motion to Amend Complaint."

This argument is unsupported by the transcript. The Defendants correctly identify that the district court was concerned with the statute of limitations being an absolute bar to all the Davises' claims; this is clear from the outset of the hearing. However, the district court did not articulate on the record that it "believe[d] that this action is barred by the statute of limitations[,]" but that it would issue a written decision. The district court did not discuss the statute of limitations in the context of the claims the Davises sought to add, and there is no associated ruling or reasoning in the written decision. Such a ruling or reasoning is not obvious from the record. *See DAFCO LLC*, 157 Idaho at 756, 331 P.3d at 498.

Further, this error affected the Davises' substantial rights by preventing them from bringing potentially meritorious claims. *See Baughman v. Wells Fargo Bank, N.A.*, 162 Idaho 174, 179, 395 P.3d 393, 398 (2017) (alteration in original) (citation omitted) ("[A]lleged errors not affecting substantial rights will be disregarded."). Accordingly, the district court's order denying the Davises' motion to amend their complaint is vacated.

## C. The Davises are not entitled to attorney fees under the Agreement, but are entitled to costs on appeal.

The Davises argue that they are entitled to attorney fees and costs on appeal under the terms of the Agreement. The Agreement provides: "In the event of any suit or other proceeding arising

15

out of this Agreement, the prevailing party shall be entitled to its reasonable attorney's fees and all costs incurred relative to such suit or proceeding." The Defendants respond, arguing that "this appeal, and the claims that were before the District Court, did not arise out of the [Agreement]." The Davises argue in return that their action never would have been instituted if they had not signed the Agreement.

Attorney fees may be awarded to the prevailing party on appeal if provided for in a contract or statute. I.R.C.P. 54(e); I.A.R. 41.

> For a tort claim to be considered as "arising out of or relating to" a contract, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself. *Seifert v. U.S. Home Corp.*, 750 So.2d 633 (Fla. 1999); *Dusold v. Porta–John Corp.*, 807 P.2d 526 (Ariz. App. 1990). The required relationship between the dispute and the contract does not exist simply because the dispute would not have arisen absent the existence of the contract between the parties. *[Seifert]*, 750 So.2d 633; *[Dusold]*, 807 P.2d 526. If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. *[Dusold]*, 807 P.2d 526. Conversely, the dispute is not one arising out of the contract if the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties. *Id.*

*Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 47, 72 P.3d 877, 887 (2003) (parallel citations omitted).

The Davises' argument on appeal is precisely the argument this Court rejected in *Lovey*—i.e., the Davises' contention that their suit would never have been filed if the Davises had not signed the Agreement. "The required relationship between the dispute and the contract does not exist simply because the dispute would not have arisen absent the existence of the contract between the parties." *Lovey*, 139 Idaho at 47, 72 P.3d at 887. The fraud and constructive fraud claims alleged by the Davises do not, "at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Id.* (citations omitted). The Agreement does not describe what Tuma represented to the Davises, nor are its contents in dispute. Instead, the Davises argue more broadly that the Agreement led them to believe they were in a relationship of trust and confidence with Tuma and the other defendants. However, the Davises do not rely on any provision in the Agreement for this argument. Instead, they merely contend the circumstances surrounding the Agreement give rise to an award of attorney fees. This is an

16

insufficient basis to render this action as "arising from" the Agreement. *See Lovey*, 139 Idaho at 47, 72 P.3d at 887.

Accordingly, the Davises are not entitled to attorney fees on appeal under the terms of the Agreement. However, the Davises are entitled to an award of costs on appeal under Idaho Appellate Rule 40(a) as they have prevailed on appeal.

## IV. CONCLUSION

For the reasons stated, we reverse the district court's order granting summary judgment against the Davises on their fraud and constructive fraud claims, and vacate the order denying the Davises' motion to amend their complaint. We accordingly vacate the judgment arising from these orders.

We remand the case for further proceedings. Costs are awarded to the Davises as they have prevailed on appeal.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.

17